# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6851 | **DATE** | 4/25/2003 |
| **CASE TITLE** | XCO INTERNATIONAL INCORP. vs. PACIFIC SCIENTIFIC COMPANY | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. XCO's motion for attorney's fees and costs pursuant to Federal Rule of Civil Procedure 11 is denied. XCO's motion for attorney's fees and costs pursuant to 28 U.S.C. 1927 is denied. XCO's motion for attorney's fees and costs pursuant to 35 U.S.C. 285 is denied. Pacific's cross-motion for attorney's fees pursuant to Rule 11 is denied. XCO's motion for costs is granted in part and denied in part. Pacific's motion for costs is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | APR 29 2003 date docketed | |
| ✓ | Docketing to mail notices. | | 123 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| LG | courtroom deputy's initials | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

DOCKETED
APR 29 2003

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| XCO INTERNATIONAL INCORPORATED, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 01 C 6851 |
| v. ) | |
| ) | |
| PACIFIC SCIENTIFIC COMPANY, ) | Judge John W. Darrah |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, XCO International Inc. ("XCO"), filed suit against Defendant, Pacific Scientific Co. ("Pacific"), alleging breach of contract. Pacific filed a counterclaim, alleging that XCO breached a licensing agreement between the parties. Judgment was entered in favor of Pacific on XCO's breach of contract claim and in favor of XCO on Pacific's counterclaim. Presently before the Court are: (1) XCO's Motion for Attorney's Fees and Costs Pursuant to Federal Rule of Civil Procedure 11; (2) XCO's Motion for Attorney's Fees and Costs Pursuant to 28 U.S.C. § 1927; (3) XCO's Motion for Attorney's Fees and Costs Pursuant to 35 U.S.C. § 285; (4) Pacific's Cross-Motion for Attorney's Fees Pursuant to Rule 11; (5) XCO's Motion for Costs; and (6) Pacific's Motion for Costs.

## BACKGROUND

Certain United States Patents ("Patents") were owned by XCO. In February 1991, XCO entered into a Purchase Agreement with Pacific for the purchase of the Patents. At the same time, XCO entered into a License Agreement with Pacific, granting XCO an exclusive license to use and sell products under the Patents throughout the world.

Prior to August 2001, XCO brought a breach of contract suit against Pacific in the Circuit Court of Kane County, alleging that Pacific failed to pay maintenance fees required by the Purchase Agreement. The action was removed from the Circuit Court of Kane County to this Court. Pacific filed its answer and a counterclaim against XCO, alleging that XCO breached the License Agreement by failing to pay royalties for sales of the product and by increasing prices for the product without justification, as required by the License Agreement.

XCO filed an Answer and Affirmative Defenses to the Counterclaim; wherein, XCO denied that the product was the same product that was the subject of the License Agreement. XCO's affirmative defenses included laches, statute of limitations, payment, accord and satisfaction, unclean hands, and waiver.

XCO filed Motions for Summary Judgment in its favor on its complaint and against Pacific on the Counterclaims. XCO's Motion for Summary Judgment on Pacific's breach of contract claim for failure to pay royalties for the time periods of 1991 to 1993 and 1998 to the present was based on the grounds that the royalties allegedly owed for 1991 to 1993 were barred by the applicable statute of limitations. The Court found that the claim for royalties sought for 1991 to 1993 were time barred.

As additional grounds, XCO contended that no royalties were owed for 1998 to the present and that XCO was allowed to raise the prices because XCO had only sold the new product to Pacific which was not the product covered by the License Agreement. On October 1, 2002, the Court granted XCO's Motion for Summary Judgment on the counterclaim against it for 1998 to the present, finding that the new product was not covered by the License Agreement.

On that same day, the Court denied XCO's Motion for Summary Judgment against Pacific

on XCO's breach of contract claim. XCO filed a Motion for Reconsideration of this ruling which was denied on December 18, 2002. On January 8, 2003, XCO filed the three motions for sanctions. Subsequently, each party filed a motion for costs. On March 10, 2003, Pacific filed a cross-motion for sanctions.

## ANALYSIS

1. XCO's Motion for Attorney's Fees and Costs Pursuant to Rule 11

Federal Rule of Civil Procedure Rule 11 states, in pertinent part:

> (b) By presenting to the court ... a pleading, written motion, or other paper, an attorney ... is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, —
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law...
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery;
> * * *
> (c) Sanctions. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

Pursuant to Rule 11, the motion for sanctions must be (1) made separately from other motions and (2) it may not be presented to the court unless, within twenty-one days of service, the non-movant has not withdrawn or corrected the challenged behavior. Fed. R. Civ. P. 11(c)(1)(A); *Divane v. Krull Electric Co.*, 200 F.3d 1020, 1025 (7th Cir. 1999) (*Divane*). It is an abuse of discretion to impose sanctions without adhering to the twenty-one day "safe harbor". However,

3

Rule 11(c)(1)(A) does not specify a specified time period when a motion for sanctions must be filed. *See Divane*, 200 F.3d at 1025.

To measure the reasonableness of a party's inquiry into the factual bases of its claims, the court reviews several factors, including: whether the signer of the document has sufficient time for investigation; the extent to which the attorney had to rely on his client for the factual foundation underlying the pleading; the complexity of the facts and the ability to do a sufficient pre-billing investigation; and whether discovery would have been helpful to the development of the underlying facts. *See Divane*, 200 F.3d at 1028. However, a party is not required to revise pleadings to conform with newly discovered evidence that were not subject to sanctions when the papers were filed. *See Pantry Queen Foods, Inc. v. Lifschultz Fast Freight, Inc.*, 809 F.2d 451, 454 (7th Cir. 1987). "The signer's conduct must be judged by inquiring what was reasonable to believe at the time the pleading or other paper was signed", and the attorney "need not advance a winning argument to avoid Rule 11 sanctions." *LaSalle Nat. Bank of Chicago v. County of DuPage*, 10 F.3d 1333, 1338 (7th Cir. 1993).

XCO asserts that Pacific violated Rule 11 by filing its counterclaims before reasonably investigating and examining whether the product at issue was covered by the License Agreement. XCO contends that Pacific should have interpreted the claims of the underlying patents and should have tested the product to determine if it fell within the claim limitations of the underlying patents and; therefore, was subject to the License Agreement. Moreover, Pacific persisted in its counterclaim against XCO despite learning through discovery and being informed by XCO that the new product it was selling was not the product covered by the License Agreement. XCO seeks $383,894.43 in attorney's fees and costs in defending the counterclaims.

Pacific contends that the Rule 11 motion should be denied because XCO did not comply with the twenty-one day safe harbor provision. In its response to the motion, Pacific states that it was served with the motion on January 8, 2003. Later, it states that it was not served prior to January 16, 2003. The conflicting statements are not clarified in the response nor are they supported by any affidavits or exhibits.

XCO states that Pacific was served with the motion on January 8, 2003; the motion was filed on January 29, 2003, and presented to the Court on February 4, 2003. Based on these facts, the motion was filed in accordance with the twenty-one day safe harbor provision.

Pacific next contends XCO's Rule 11 motion for sanctions was untimely because it was not filed as soon as possible. Instead, XCO waited until over 100 days after summary judgment was granted on October 1, 2002.

Motions for sanctions should be filed as soon as practicable after the discovery of a Rule 11 violation. *See Divane*, 200 F.3d at 1027; *Kaplan v. Zenner*, 956 F.2d 149, 151 (7th Cir. 1992). However, they can be filed after entry of judgment. *Divane*, 200 F.3d at 1027.

XCO responds that it was necessary to wait until summary judgment was entered because Pacific failed to produce relevant evidence in the course of discovery and that it was not until the resolution of the summary judgment proceedings that the lack of evidentiary support for Pacific's claims could be conclusively determined. However, this contention by XCO is flatly contradicted by XCO's assertion that Pacific proceeded on its counterclaim in bad faith. XCO claims that Pacific knew the product at issue was not covered by the counterclaim as early as April or May of 2002. In support of this argument, XCO identifies filings XCO made to the Court which informed Pacific of this fact as well as an expressed warning to Pacific that Pacific was violating Rule 11 by

maintaining its counterclaim.

Obviously, XCO believed that Pacific's counterclaims were meritless at this time because both parties knew XCO had been selling a product that was not included in the License Agreement. XCO clearly believed that Pacific was, therefore, in violation of Rule 11 in this regard as early as April/May 2002.

XCO attempts to justify the eight-month delay after it first believed that Pacific's claims were meritless and in violation of Rule 11. XCO first argues that equitable considerations of warning Pacific in April/May 2002 excuse XCO's delay. Second, XCO argues that its reliance on the ruling in *Divane v. Krull Electric Co.*, 200 F.3d 1020 (7th Cir. 1999), *i.e.*, that a motion for sanctions under Rule 11 could be filed after the entry of summary judgment, supports a finding that the present motion was timely. XCO's attempted justification is meritless. XCO's "warning" to Pacific clearly demonstrates that it believed that Pacific's claims were meritless and in violation of Rule 11 even before the close of discovery. Instead of timely acting on this knowledge, XCO continued with the litigation and filed motions for summary judgment and a motion for reconsideration.

Furthermore, XCO's reliance on the *Divane* court's holding, that a sanctions motion need not be filed prior to the entry of summary judgment, is contrary to *Divane's* explicit caution that '[r]easonableness is necessarily dictated by the specific facts and circumstances in a given case'. *Divane*, 200 F.3d at 1028. The prevailing party in *Divane* did file a motion for Rule 11 sanctions prior to trial when the evidence first suggested the claims were meritless. But the motion was refiled after trial because the trial court had dismissed the original motion as premature. Here, XCO did not move for sanctions until more than eight months after it believed Rule 11 sanctions were

appropriate and only after extensive motion practice and the entry of final judgment. Based on these facts, XCO's Motion for Sanctions Pursuant to Federal Rule of Civil Procedure was not filed as soon as practicable after the discovery of a Rule 11 violation; and XCO has failed to raise any equitable considerations to explain its delay. Accordingly, the motion is denied. *See Kaplan*, 956 F.2d at 151; *Northlake Marketing & Supply, Inc. v. Glaverbel*, 194 F.R.D. 633, 635 (N.D. Ill. 2000) (*Northlake*).

Assuming *argumendo*, that XCO's motion had been timely, XCO's motion for sanctions pursuant to Rule 11 still fails because Pacific did not violate section (b) of Rule 11.

At the time that the counterclaim was filed, facts known to Pacific supported their counterclaims that XCO had failed to pay royalties for sales of the product which was subject to the License Agreement. These facts included: (1) XCO requested and subsequently received Pacific's consent to manufacture and sell the product covered by the License Agreement in July 1997 and August 1998; (2) from 1998 to 2001, Pacific placed orders for this product with XCO; (3) XCO delivered this product to Pacific under representations that it was filling these orders with this product; (4) XCO delivered this product with labels attached to the deliveries identifying the product as being sold pursuant to the Patents XCO sold to Pacific pursuant to the Purchase and License Agreement; and (5) in August 2000 and July 2001, XCO advised Pacific the materials used in the product at issue were identical to the materials used in all of XCO's previous products. Furthermore, XCO's general denials in its answer and affirmative defenses did not indicate that the product at issue was not the same product included in the License Agreement. Based on these facts, Pacific did not have notice that the product XCO was selling was a "new" product that may not be subject to the License Agreement. Accordingly, Pacific was not deficient in not testing the product to determine if it was within the Patents that were subject to the License Agreement. Pacific had no

7

reason to believe that the product was anything but the product covered by the License Agreement.

If XCO's Motion for Sanctions Pursuant to Rule 11 had been timely filed, based on the above facts, the motion would be denied on this basis.

## 2. XCO's Motion for Attorney's Fees and Costs Pursuant to 28 U.S.C. § 1927

Pursuant to Section 1927, an attorney who multiplies the proceedings in any unreasonable and vexatious manner may be required to satisfy personally the costs, expenses, and attorney's fees incurred because of such conduct. *See* 28 U.S.C. § 1927; *Kotsilieris v. Chalmers*, 966 F.2d 1181, 1183 (7th Cir. 1992) (*Kotsilieris*). "Vexatious" has been interpreted to mean either subjective or objective bad faith, such as counsel who has acted recklessly, counsel who raised baseless claims despite notice of the frivolous nature of the claims, or counsel otherwise showed indifference to statutes, rules or court orders. *Kotsiliers*, 966 F.3d at 1183-85. Furthermore, Section 1927 imposes a continuing duty on counsel to dismiss claims that are no longer viable. *See Burda v. M. Ecker Co.*, 2 F.3d 769, 777 (7th Cir. 1993).

XCO argues that Pacific's counsel showed bad faith by failing to reasonably investigate the merits of its counterclaims prior to their filing its counterclaims even though it had actual notice that XCO's product was not covered by the subject patents of the License Agreement, and pursuing its counterclaims even after receiving additional evidence that XCO's product was not covered by the subject patents of the License Agreement. XCO seeks $383,894.43 in attorney's fees and costs in defending the counterclaims.

Pacific first argues that XCO's motion for sanctions pursuant to Section 1927 is also untimely.

The requirement that motions for sanctions be filed as soon as practicable after the discovery

8

of a violation, as applied to a Rule 11 violation, has also been applied to sanctions pursuant to Section 1927. *See Northlake*, 194 F.R.D. at 636; *cf. Smith v. CB Commercial Real Estate Group*, 947 F. Supp. 1282, 1285 (N.D. Ind. 1996) (not applying a thirty-day time period following the entry of judgment to a motion for sanctions pursuant to Section 1927 as was applied to a motion for sanctions under Rule 11). Citing to *Kaplan*, the *Northlake* court found that the rationale underpinning *Kaplan's* timeliness standard to be equally persuasive in all three contexts of sanctions, including Rule 11, Section 1927, or the inherent powers of the judiciary. *Northlake*, 194 F.R.D. at 636. "There is no more reason for permitting an unjustified delay in submission of a sanctions motion that calls one potential source of such relief into play than there is where another possible source is at issue." *Northlake*, 194 F.R.D. at 636.

The rational in *Northlake* is persuasive. The requirement that a motion for sanctions be filed as soon as practicable after the discovery of a Rule 11 violation should equally apply to a motion for sanctions pursuant to Section 1927. As discussed above, XCO waited over eight months after it concedes it believed sanctions were appropriate before filing the instant motion. XCO also proceeded to litigate its motion for summary judgment and motion for reconsideration during such time. As also discussed above, XCO has failed to raise any equitable considerations to explain its delay. Accordingly, the motion is denied.

3. XCO's Motion for Sanctions Pursuant to 35 U.S.C. § 285

XCO next seeks sanctions pursuant to 35 U.S.C. § 285.

Section 285 of Title 35 provides that a district court "in exceptional cases may award reasonable attorney's fees to the prevailing party." An award of fees is a two step process. First, the court must find that the case is an "exceptional case". If the court determines an exceptional case

9

exists, it then, in its discretion, must decide whether to award attorney's fees. *Badalamenti v. Dunham's, Inc.*, 896 F.2d 1359, 1365 (Fed. Cir. 1990) (*Badalamenti*).

The party seeking an exceptional case status has the burden of proving that its case is exceptional by clear and convincing evidence. *Badalamenti*, 896 F.2d at 1364. Circumstances that support a finding of an exceptional case include inequitable conduct in the procurement of a patent, willful infringement, misconduct during litigation, vexatious or unjustified litigation, or a frivolous suit. *Standard Oil Co. v. American Cynamid Co.*, 774 F.2d 448, 455 (7th Cir. 1985). A frivolous infringement suit is one in which the patentee knew or, on reasonable investigation, should have known, was baseless. An inference of bad faith may be found through wrongful intent, recklessness, or gross negligence. *Eltech Sys. Corp. v. PPG Indus., Inc.*, 903 F.2d 805, 811 (Fed. Cir. 1990).

As indicated above, Section 285 applies to patent cases. XCO argues that Section 285 also applies to the instant case because patent law is a necessary element of Pacific's breach of contract counterclaims because Pacific's counterclaims sought royalties under the License Agreement which requires an examination of the patents involved to determine if the product is subject to the License Agreement.

A claim arises under the patent laws if the relief sought is defeated by one patent construction, or sustained by the opposite construction of the patent laws. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 807-08 (1988). Thus, patent law has been found to apply to breach of contract cases were the only way to demonstrate that a party breached a license agreement was to show that the product sold was covered by the license agreement via an examination of

whether the product sold was subject to the patents in the license agreement. *See U.S. Valves, Inc. v. Dray*, 212 F.3d 1368, 1372 (Fed. Cir. 2000) *(Dray II)*; *U.S. Valves, Inc. v. Dray*, 190 F.3d 811, 813-14 (7th Cir. 1999) *(Dray I)*.

In *Dray*, the court found that because Dray sold more than one type of the product at issue, the breach of contract claim required a showing that Dray sold product covered by the licensed patents. Therefore, the claim required a determination of whether Dray's products infringed the applicable patents, and patent law was a necessary element of the U.S. Valves' breach of contract claim. *See Dray II*, 212 F.3d at 1372; *Dray I*, 190 F.3d at 813-14.

Patent law and Section 285 apply to the instant case, as demonstrated by this Court's ruling on the Motion for Summary Judgment in which the Court was required to determine whether the product sold by XCO was subject to the License Agreement by comparing this product to the patents subject to the License Agreement.

While Section 285 applies to the instant case, XCO has failed to demonstrate that Pacific's counterclaims constitute an exceptional case. As set forth fully above, at the time that Pacific filed its counterclaims, it had no basis to believe that the product it had been receiving was not subject to the License Agreement and that testing of the product was necessary to determine whether it was subject to the License Agreement. Based on the facts known to Pacific, there is no indication that the counterclaim constituted vexatious or unjustified litigation or a frivolous lawsuit. Accordingly, XCO's Motion for Sanctions Pursuant to 35 U.S.C. § 285 is denied.

4. Pacific's Cross-Motion for Attorney's Fees Pursuant to Rule 11

Pacific seeks sanctions against XCO for the amount that Pacific incurred in attorney's fees in responding to XCO's above three motions for sanctions on the basis that the motions were

presented for the improper purpose to harass and/or needlessly increase the cost of litigation and have no reasonable bases in fact and law.

The above facts and analysis pertaining to XCO's Motions for Sanctions demonstrate that, while XCO did not prevail on its motions, such motions had a reasonable bases in fact and law. Furthermore, there is no evidence that XCO brought the motions for the improper purpose to harass or needlessly increase the cost of litigation. Accordingly, Pacific's Cross-Motion for Attorney's Fees Pursuant to Rule 11 is denied.

5. XCO's Motion for Costs

XCO seeks a total of $9,560.69 in costs incurred by XCO in defending Pacific's counterclaims.

"Costs ... shall be allowed as of course to the prevailing party unless the court otherwise directs." Fed. R. Civ. P. 54(d). Recoverable costs, as set forth in 28 U.S.C. § 1920, include: (1) fees of the clerk, (2) fees for transcripts, (3) fees for printing and witnesses, (4) fees for copies of papers necessarily obtained for use in the case, (5) docket fees, and (6) compensation of court- appointed experts and interpreters.

There is a strong presumption favoring the award of costs to the prevailing party. *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 945 (7th Cir. 1997) (*Weeks*). "The presumption is difficult to overcome, and the district court's discretion is narrowly confined -- the court must award costs unless it states good reasons for denying them." *Weeks*, 126 F.3d at 945.

XCO seeks $1,1819.13 for reimbursement of "internal copying" costs of necessarily obtained copies for filings and production related to Pacific's counterclaims. XCO calculated the amount of internal copy costs by reducing the total cost of internal copies, $2,425.50 (calculated by

12

multiplying the total number of internal copies of 24,255 pages by $0.10 per pages), by 25% because such amount "is a reasonable estimate of the copy costs related solely to [Pacific's] counterclaims."

A party may recover costs of copies provided to the court and opposing counsel; it cannot recover costs for copies for its own use. *Sharp v. United Airlines*, 197 F.R.D. 361, 362 (N.D. Ill. 2000).

XCO fails to describe what documents were copied or how many copies of each document were copied. Furthermore, XCO estimates that 75% of the total copying costs are attributable to defending the counterclaims but provides no information on how it derived this figure. While XCO asserts that the copying costs were "necessarily obtained"; based on the information provided, it cannot be determined that these materials were reasonably necessary. Copying charges that are not discernable from the supporting documentation are not allowed. *See American Automotive Accessories v. Fishman*, 991 F. Supp. 995, 997 (N.D. Ill. 1998) (*Fishman*); *Falcon v. City of Chicago*, 2000 WL 1231403 (N.D. Ill. Aug. 28, 2000) (*Falcon*). Accordingly, these copy charges cannot be assessed against Pacific.

XCO also seeks reimbursement of $2,393.26 for "outside copying service" costs for documents that were filed with the court as well as documents that were produced to Pacific in response to discovery requests. The total amount for outside copy services reflects the cost of three sets of copies of documents, two sets for XCO's counsel and one set to Pacific. XCO calculated the amount of outside copy costs by reducing the total cost of internal copies, $7,186.96 (calculated by multiplying the total number of outside copies of 51,216 pages by $0.14 per page), by 66% to reflect only the copies actually filed with the court and/or produced to Pacific.

XCO again fails to describe what documents were copied. Therefore, it cannot be

13

determined that these materials were reasonably necessary. Copying charges that are not discernable from the supporting documentation are not allowed. *See Fishman*, 991 F. Supp. at 997; *Falcon*, 2000 WL 1231403 at * 2. Accordingly, these copy charges cannot be assessed against Pacific.

XCO also seeks a total of $5,348.30 for reimbursement of subpoena service costs, deposition witness fees, and deposition transcripts necessarily obtained in relation to Pacific's counterclaims.

Prevailing parties may recover service costs that do not exceed the Marshal Service's fees regardless of who effected service. *Collins v. Gorman*, 96 F.3d 1057, 1060 (7th Cir. 1996). The Marshal's Service charges $40 per hour for the first two hours and $20 for every hour thereafter plus $0.31 per mile. *Johnson v. City of Elgin*, 2002 WL 171971 (N.D. Ill. Feb. 1, 2002).

The costs of deposition transcripts "necessarily obtained for use in the case" are authorized by 28 U.S.C. § 1920(2). The "transcripts need not be absolutely indispensable in order to provide the basis of an award of costs; it is enough that they are "reasonably necessary". *Barber v. Ruth*, 7 F.3d 636, 645 (7th Cir. 1993). The Judicial Conference has established $3.30 as the rate per page for an original transcript, $4.40 per page for each expedited copy, $0.75 per page for the first copy of a transcript, and $0.55 per page for each additional copy to the same party. In addition, the rate of $40 per hour for court reporter fees is reasonable. *See Sanglap v. LaSalle Bank*, 194 F. Supp. 2d 798, 803 (N.D. Ill. 2001).

XCO seeks $945 in subpoena service and witness fees for five individuals. The invoice for these fees lists the individuals and the total amount due. However, the invoice does not indicate how the total amount due was calculated, *i.e.*, the charges per individual, mileage for each individual, etc. Accordingly, the reasonableness of these fees cannot be determined, and they must be denied.

XCO seeks $951.50 for the deposition transcript of Bayard Davis and $592 for the deposition

14

transcript of Chris Kious. The invoices for each of these depositions only state the total amount due. The invoices do not indicate how many pages were transcribed or the price per page for transcription. Accordingly, the reasonableness of these fees cannot be determined, and they must be denied.

XCO seeks $402.75 in deposition costs for Steven Newhouse ("Newhouse"). Pacific argues that Newhouse's deposition was related solely to XCO's claims and not the counterclaims. However, even Pacific relied upon Newhouse's deposition in defending its counterclaims, as evidenced by including the deposition transcript as an exhibit in its response to XCO's motion for summary judgment on Pacific's counterclaims. Furthermore, XCO admits that only 50% of Newhouse's deposition related to Pacific's counterclaims.

The total amount requested for Newhouse's deposition ($402.75) includes $341 for the transcription of the deposition. This amount is for 124 pages at the rate of $2.75 per page. The rate per page is within that allowed by the Judicial Conference. However, while XCO requests only 50% payment for the remaining amounts due for Newhouse's deposition because only 50% related to Pacific's counterclaims, XCO does not reduce the transcription cost by 50%. XCO does not explain why the other costs would be reduced but not the transcription costs. Nor can it be determined why the transcription costs should not also be reduced by 50%. Accordingly, XCO is awarded $170.50 for the deposition transcription of Newhouse.

The $402.75 also includes a fee of $48.50 for the "30B6" of Newhouse, calculated via 10 pages at $4.85 per page. The invoice further notes that the "30B6 of Newhouse was not ordered transcribed, it is billed at 75% of the estimated pages." Because this transcript was not ordered, and not transcribed, this fee is not recoverable.

The $402.75 also includes an appearance fee of $37.50 (50% of $75). The invoice does not

indicate the number of hours nor the charge per hour for the court reporter's appearance fee. Accordingly, the reasonableness of this fee cannot be determined, and it must be denied.

XCO seeks $401.25 in deposition costs of James Bear. This amount includes $363.75 for the "transcription" of the deposition. However, the deposition transcript was not ordered and was not transcribed. Accordingly, this fee cannot be awarded. Furthermore, the reasonableness of the $37.50 sought for the appearance fee cannot be determined because the invoice does not indicate the number of hours or the rate per hour for the court reporter's appearance. Therefore, this fee also cannot be awarded.

XCO seeks $206.25 for the deposition of Steven Breitzka. This amount includes $148.75 in transcription costs, calculated by multiplying 119 pages at the rate of $2.50 per page and reducing that total by 50% because only 50% of the deposition related to Pacific's counterclaims. This fee is reasonable and is awarded. The $206.25 also includes $57.50 for the attendance fee. However, the reasonableness of the $57.50 sought for the appearance fee cannot be determined because the invoice does not indicate the number of hours or the rate per hour for the court reporter's appearance. Therefore, this fee cannot be awarded.

XCO seeks $400 for the deposition of Richard Knoblock. The invoice for this deposition includes only a designation of an appearance fee and a total due of $400. The reasonableness of this fee cannot be determined because the invoice does not indicate the number of hours or the rate per hour for the court reporter's appearance. Accordingly, this fee also cannot be awarded.

XCO seeks a total of $790 for the deposition of Michael Fone ("Fone"). This amount includes $715 in transcription costs calculated at 286 pages at the rate of $2.50 per page. The rate per page is within that allowed by the Judicial Conference. However, XCO did not reduce this

deposition transcription by 50%. A review of the materials XCO submitted in support of its motion for summary judgment on its claim demonstrates that XCO relied upon Fone's deposition when it was prosecuting its claim. Accordingly, the deposition costs should be reduced by 50%. Therefore, XCO is awarded $375.50 for the deposition transcription of Fone.

The $790 also includes a $75 appearance fee. The reasonableness of this fee cannot be determined because the invoice does not indicate the number of hours or the rate per hour for the court reporter's appearance. Accordingly, this fee also cannot be awarded.

Lastly, XCO seeks a total of $659.55 for the deposition of Glenn Turpen ("Turpen"). This amount includes $440 in transcription costs calculated at 176 pages at the rate of $2.50 per page. The rate per page is within that allowed by the Judicial Conference. However, XCO did not reduce this deposition transcription by 50%. Pacific argues that Turpen's deposition was solely related to XCO's breach of contract claim. A review of the materials submitted by both parties demonstrates that Turpen's deposition was used for both XCO's breach of contract claim and Pacific's counterclaims. Therefore, the deposition costs should be reduced by 50%. Accordingly, XCO is awarded $220 for the deposition transcription of Turpen.

The $659.55 also includes a $219.55 appearance fee. The reasonableness of this fee cannot be determined because the invoice does not indicate the number of hours or the rate per hour for the court reporter's appearance. Accordingly, this fee also cannot be awarded.

For the reasons stated above, XCO's Motion for Costs is granted in part and denied in part. XCO is awarded $766 in costs.

6. Pacific's Motion for Costs

Pacific seeks a total of $8,858.19 in deposition and copying costs pursuant to Federal Rule

of Civil Procedure 54(d) and 28 U.S.C. § 1920. XCO argues that Pacific is not entitled to its costs because it was not a prevailing party.

The recovery of costs by a prevailing party is based on Rule 54(d) and 28 U.S.C. § 1920. *See Cengr v. Fusibond Piping Sys., Inc.*, 135 F.3d 445, 454 (7th Cir. 1998). A "prevailing party" is the "party who prevails as to the substantial part of the litigation". *See Northbrook Excess & Surplus Ins. Co. v. Proctor & Gamble Co.*, 924 F.2d 633, 641 (7th Cir. 1991) (internal quotations omitted).

Pacific contends that it was the prevailing party in XCO's breach of contract claim. However, this Court's previous ruling on XCO's summary judgment motion demonstrate that Pacific did not prevail as to the substantial part of XCO's breach of contract claim.

In XCO's breach of contract claim, the significant issue was whether Pacific breached the Purchase Agreement between the parties. The undisputed facts demonstrated that Pacific breached Paragraph 1.5.3 of the Purchase Agreement. However, the Court was unable to award damages because it found that the liquidated damages clause was unenforceable. Having not sought any other damages, judgment was subsequently entered in Pacific's favor. These facts demonstrate that, on the substantial part of the litigation -- XCO's breach of contract claim -- Pacific was not the prevailing party. Accordingly, Pacific is not entitled to costs pursuant to Rule 54(d) and 28 U.S.C. § 1920.

## CONCLUSION

For the foregoing reasons, XCO's Motion for Attorney's Fees and Costs Pursuant to Federal Rule of Civil Procedure 11 is denied. XCO's Motion for Attorney's Fees and Costs Pursuant to 28 U.S.C. § 1927 is denied. XCO's Motion for Attorney's Fees and Costs Pursuant to 35 U.S.C. § 285

is denied. Pacific's Cross-Motion for Attorney's Fees Pursuant to Rule 11 is denied. XCO's Motion for Costs is granted in part and denied in part. Pacific's Motion for Costs is denied.

Dated: April 25, 2003

JOHN W. DARRAH
United States District Judge